LAWSON, J.
 

 We accepted review of the Fifth District Court of Appeal's decision in
 
 Purdy v. State
 
 , --- So.3d ----, 42 Fla. L. Weekly D272 (Fla. 5th DCA Jan. 27, 2017), to answer the following certified question:
 

 WHEN A JUVENILE OFFENDER IS ENTITLED TO A SENTENCE REVIEW HEARING, IS THE TRIAL COURT REQUIRED TO REVIEW THE AGGREGATE SENTENCE THAT THE JUVENILE OFFENDER IS SERVING FROM THE SAME SENTENCING PROCEEDING IN DETERMINING WHETHER TO MODIFY THE OFFENDER'S SENTENCE BASED UPON DEMONSTRATED MATURITY AND REHABILITATION?
 

 Purdy v. State
 
 , --- So.3d ----, ----, 42 Fla. L. Weekly D967, D967 (Fla. 5th DCA Apr. 28, 2017) (certifying question). We have jurisdiction.
 
 See
 
 art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and quash the Fifth District's decision, which held that chapter 2014-220, Laws of Florida, requires modification of the overall sentence whenever a juvenile establishes rehabilitation at a statutorily required sentence review hearing.
 

 BACKGROUND
 

 I. Legal Context
 

 In
 
 Graham v. Florida
 
 ,
 
 560 U.S. 48
 
 , 75,
 
 130 S.Ct. 2011
 
 ,
 
 176 L.Ed.2d 825
 
 (2010), the United States Supreme Court held that the Eighth Amendment categorically forbids a sentence of life without parole for juvenile nonhomicide offenders and requires that any life sentence for a juvenile nonhomicide offender be accompanied by "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" before the end of the sentence and during the offender's natural life.
 

 Two years later, in
 
 Miller v. Alabama
 
 ,
 
 567 U.S. 460
 
 , 479,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012), the Supreme Court held that the Eighth Amendment prohibits the imposition of a mandatory life sentence without the possibility of parole for juvenile homicide offenders. Although the holdings of
 
 Graham
 
 and
 
 Miller
 
 are narrow and specific, the discussion in both cases broadly outlines Eighth Amendment principles requiring states to take into account, as part of the sentencing process, the immaturity of those under the age of 18-and the consequent ability of younger offenders to reform as they mature.
 
 See
 

 Graham
 
 ,
 
 560 U.S. at 68
 
 ,
 
 130 S.Ct. 2011
 
 ;
 
 Miller
 
 ,
 
 567 U.S. at 471-72
 
 ,
 
 132 S.Ct. 2455
 
 .
 

 In response, the Florida Legislature adopted chapter 2014-220, Laws of Florida, codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes, to address the Eighth Amendment principles articulated in
 
 Graham
 
 and
 
 Miller
 
 . Although the effective date of these statutes was prospective as of July 1, 2014, this Court later unanimously held that
 
 Miller
 
 applied retroactively,
 
 see
 

 Falcon v. State
 
 ,
 
 162 So.3d 954
 
 , 962 (Fla. 2015), and that when a juvenile sentence imposed before July 1, 2014, violates
 
 Miller
 
 , the appropriate remedy is resentencing pursuant to chapter 2014-220.
 
 Horsley v. State
 
 ,
 
 160 So.3d 393
 
 , 405-06 (Fla. 2015) ;
 
 see also
 

 Henry v. State
 
 ,
 
 175 So.3d 675
 
 , 680 (Fla. 2015) (unanimously holding that resentencing pursuant to chapter 2014-220 is the proper remedy for a sentence that violates
 
 Graham
 
 ).
 

 Significantly, in this case, the parties present and argue the certified question as one of statutory construction, which is answered by the plain language of the relevant statutes.
 
 See
 

 Holly v. Auld
 
 ,
 
 450 So.2d 217
 
 , 219 (Fla. 1984) ("[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." (quoting
 
 A.R. Douglass, Inc. v. McRainey
 
 ,
 
 102 Fla. 1141
 
 ,
 
 137 So. 157
 
 , 159 (1931) ) ).
 

 Questions of statutory interpretation are reviewed de novo.
 
 See
 

 Borden v. East-European Ins. Co.
 
 ,
 
 921 So.2d 587
 
 , 591 (Fla. 2006).
 

 II. Relevant Statutes
 

 Sections 775.082, 921.1401, and 921.1402, Florida Statutes (2015), now provide special sentencing rules for juveniles convicted of "certain serious felonies" identified in those statutes. Ch. 2014-220 (title);
 
 see also
 
 § 921.1402, Fla. Stat. (2015) ("Review of
 sentences for persons convicted
 
 of specified offenses
 
 while under the age of 18 years.") (emphasis added).
 
 [1]
 
 Those provisions, by their express terms, apply only to homicide offenses, which are defined in section 782.04, Florida Statutes (2015), and nonhomicide offenses that can be punished by life. §§ 775.082(1)(b), 775.082(3)(a) 5., 775.082(3)(b)2., 775.082(3)(c)., Fla. Stat. (2015). As drafted, the special sentencing rules created by chapter 2014-220 do not apply to any other offenses.
 

 Id.
 

 For the "specified offenses," each subsection provides an early release mechanism, based on a finding of maturity and rehabilitation, for the sentence imposed pursuant to that subsection on the specified offense.
 

 Id.
 

 ;
 
 see, e.g.
 
 , § 775.082(3)(c) (explaining that a juvenile convicted of a nonhomicide offense that is punishable by life or a term of years not exceeding life, and who is sentenced to a term of imprisonment "of more than 20 years is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(d)").
 

 To fully understand chapter 2014-220, it is important to first recognize that the Legislature grafted its juvenile sentencing fix into the preexisting general statute that set the penalties applicable to each felony offense, by degree-section 775.082, Florida Statutes. Immediately prior to the enactment of chapter 2014-220, section 775.082(1) provided that the only sentences available for a capital felony were death or life. § 775.082, Fla. Stat. (2013). Section 775.082(2) dealt with the death penalty.
 

 Id.
 

 Then, section 775.082(3) listed the penalties associated with lesser felony offenses, beginning with life felonies and ending with third-degree felonies.
 

 Id.
 

 For example, section 775.082(3)(c) simply provided that a person convicted of a second-degree felony could be punished "by a term of imprisonment not exceeding 15 years."
 

 Id.
 

 With the enactment of chapter 2014-220, the Legislature amended section 775.082(1) to provide new sentencing options for juveniles convicted of capital offenses. For example, a new subsection (1)(b)1 now provides:
 

 A person who actually killed, intended to kill, or attempted to kill the victim and who is convicted under s. 782.04 [the homicide statute] of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age shall be punished by a term of imprisonment for life if, after a sentencing hearing conducted by the court in accordance with s. 921.1401, the court finds that life imprisonment is an appropriate sentence. If the court finds that life imprisonment is not an appropriate sentence, such person shall be punished by a term of imprisonment of at least 40 years. A person sentenced pursuant to this subparagraph [for a capital felony] is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(a).
 

 § 775.082(1)(b) 1., Fla. Stat. (2015). Section 921.1402(2)(a) then provides in pertinent part that "[a] juvenile
 
 sentenced under s. 775.082(1)(b) 1.
 
 [for a capital felony] is entitled to review of
 
 his or her sentence
 
 after 25 years." § 921.1402(2)(a), Fla. Stat. (2015) (emphasis added). The only sentence referenced as eligible for review in this subsection is the sentence "under s. 775.082(1)(b) 1.," which is the sentence on the capital felony for a person who "actually killed, intended to kill, or attempted to kill the victim." § 775.082(1)(b) 1., Fla. Stat. (2015). This formula continues in similar fashion for the other enumerated serious
 felonies: other homicide offenses and any nonhomicide offense classified as a "life felony" or as a "first-degree felony punishable by life" (commonly referenced by trial courts and in sentencing documents as an "F1-PBL"). § 921.1402(2)(b)-(d), Fla. Stat. (2015). Chapter 2014-220 did not add any special juvenile sentencing provisions for lower-level offenses. For example, section 775.082 still simply provides that a felony of the second degree is to be punished "by a term of imprisonment not exceeding 15 years." § 775.082(3)(d), Fla. Stat. (2017). And, no review mechanism is provided for first-degree felonies (except for F1-PBLs), second-degree felonies, or third-degree felonies.
 

 The new juvenile sentencing provisions seem complex because the sentencing rules for life felonies and F1-PBLs are complex. Life felonies committed before October 1, 1983, are punishable "by a term of imprisonment for life or a term of at least 30 years." § 775.082(3)(a) 1., Fla. Stat. (2017). Life felonies committed on or after October 1, 1983, but before July 1, 1995, are punishable "by a term of imprisonment for life or by a term of imprisonment not exceeding 40 years." § 775.082(3)(a) 2., Fla. Stat. (2017). Life felonies committed on or after July 1, 1995, are generally punishable "by a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment." § 775.082(3)(a) 3., Fla. Stat. (2017). However, there are additional sentencing rules for some life felonies committed after September 1, 2005, and July 1, 2008. § 775.082(3)(a) 4., Fla. Stat. (2017). F1-PBLs are punishable "by imprisonment for a term of years not exceeding life imprisonment." § 775.082(3)(b) 1., Fla. Stat. (2017).
 

 The new juvenile sentencing rules for life felonies and F1-PBLs are categorized based upon whether the underlying offense is a homicide offense or nonhomicide offense and the length of sentence imposed. For example, a juvenile sentenced for a nonhomicide life felony to a term-of-years sentence of more than 20 years is entitled to review of that sentence after 20 years and, for longer sentences, is entitled to a second review 10 years after the initial review. §§ 775.082(3)(c), 921.1402(2)(d), Fla. Stat. (2015). As seen in these examples, and in the text itself, the review provisions added by the Legislature are clearly and unequivocally linked to those offenses specified in chapter 2014-220. Although a review mechanism is provided for some term-of-years sentences, this is only because life felonies and F1-PBLs can be punished by a term-of-years sentence, and because a juvenile can now be sentenced to a term-of-years sentence for a capital offense. §§ 775.082(1)(b), 775.082(3)(a) 5., 775.082(3)(b)2., 775.082(3)(c)., Fla. Stat. (2015).
 

 III. Procedural History of the Case
 

 Kenneth Purdy was convicted in 1997 of first-degree murder (a capital felony), armed robbery (an F1-PBL), and armed carjacking (an F1-PBL). He was sentenced to life without parole for the murder (the only sentence available at the time) and to 112.7 months (approximately 9.4 years) for the armed robbery and armed carjacking convictions, to run concurrently with one another but consecutive to the life sentence. Purdy was 17 at the time he committed the offenses. Purdy's convictions and sentences became final in 1998.
 

 In 2015, Purdy filed a motion pursuant to Florida Rule of Criminal Procedure 3.800, arguing that his life sentence violated
 
 Miller
 
 . Purdy did not seek relief on the sentences imposed consecutively to the life sentence. The trial court granted the relief requested and resentenced Purdy to 40 years for the murder conviction pursuant to chapter 2014-220, in accordance with
 
 Horsley
 
 , with no change to the 112.7-month sentences. Consistent with sections 921.1402(2) and (4), Florida Statutes (2015), the trial court later conducted the required review and determined that Purdy was "rehabilitated and that it reasonably believed [Purdy] to be fit to reenter society."
 
 Purdy
 
 , --- So.3d at ----, 42 Fla. L. Weekly at D272. Based upon this determination, the judge reduced the 40-year sentence to 20 years, 6 months and 13 days-the amount of time already served on that sentence-followed by 10 years of probation. Determining that the statute did not authorize review of the other sentences, Purdy was returned to prison to begin serving the 112.7-month sentences. Because probation is tolled during incarceration,
 
 Evans v. Singletary
 
 ,
 
 737 So.2d 505
 
 , 508 (Fla. 1999), Purdy will begin serving the probationary term now associated with the murder conviction after serving the 112.7-month sentences, unless further relief is granted.
 

 On appeal, the Fifth District reversed and remanded for the trial court to conduct another review hearing, holding that a trial court is required to review a juvenile offender's aggregate sentence at a sentence review hearing in order to determine whether to modify the sentence based on maturity and rehabilitation.
 
 Purdy
 
 , --- So.3d at ----, 42 Fla. L. Weekly at D273. The textual basis for this holding is unclear. The Fifth District also certified the question as one of great public importance.
 

 Id.
 

 at ----, at D967.
 

 ANALYSIS
 

 Because the plain language of section 921.1402, Florida Statutes, only provides for review of the sentence imposed for Purdy's murder conviction pursuant to the new provisions added by chapter 2014-220 as sections 775.082(1)(b) and 921.1402(2)-and because no other provision authorizes resentencing on consecutive sentences-the trial court was correct in determining that the statute does not provide any basis for resentencing for the 112.7-month sentences.
 
 See
 

 Holly
 
 ,
 
 450 So.2d at 219
 
 . Although section 921.1402(2)(d) authorizes review of sentences for nonhomicide F1-PBLs imposed pursuant to section 775.082(3)(c), Purdy never sought relief from the sentences imposed for his armed robbery and armed carjacking convictions, the consequence being that he was not resentenced pursuant to chapter 2014-220 on those convictions. Even if Purdy had been resentenced pursuant to section 775.082(3)(c) for the additional convictions, the 112.7-month sentences would not qualify for review because the plain language of section 921.1402(2)(d) only provides for review if the juvenile is sentenced "to a term of 20 years or more under s. 775.082(3)(c) [on the nonhomicide F1-PBL]" and Purdy was sentenced to less than 10 years on each F1-PBL.
 

 On appeal, we have been presented with arguments pointing to several gaps and anomalies in the statutory scheme enacted to address the Eighth Amendment issues associated with juvenile sentencing. First, by limiting the review provisions to sentences imposed on crimes that carry a potential life sentence, chapter 2014-220 failed to address all potential Eighth Amendment violations.
 
 Henry
 
 ,
 
 175 So.3d at 679-80
 
 (unanimously holding that stacked consecutive term-of-years sentences that in combination exceed the life expectancy of a juvenile nonhomicide offender and do not provide a review mechanism violate the Eighth Amendment).
 

 Second, because the statute limits the review provisions and does not deal with the overall sentence, there will be other cases, like this one, where the sentencing court is required to consider whether the
 offender "is rehabilitated and is reasonably believed to be fit to reenter society" even though the offender will continue to be incarcerated irrespective of the outcome of the hearing. Amicus points out that the continued incarceration of an offender on offenses arising from a single criminal episode under these circumstances-long after a judicial determination that the juvenile offender is rehabilitated-may raise additional Eighth Amendment issues.
 
 [2]
 

 Third, by limiting the review provisions to certain serious offenses, the Legislature has placed juveniles convicted of serious violent felonies in a better position than juveniles who commit less serious nonviolent offenses. For example, section 775.082(1)(b) provides that a juvenile convicted of homicide (a capital offense) but who did not "actually kill, intend to kill, or attempt to kill the victim" is entitled to review of his or her sentence-and potential release from prison-after 15 years. § 775.082(1)(b). By contrast, a juvenile convicted of one count of sale or delivery of a controlled substance within 1000 feet of a school commits a first-degree felony and can be sentenced to 30 years in prison with no review and no opportunity for early release. §§ 893.13(1)(c)1., 775.082(3)(b)1., Fla. Stat. (2015).
 

 But the existence of these limitations in the coverage of section 921.1402 provides no basis for a judicial expansion of the statute that ignores the unambiguous statutory provisions.
 
 See, e.g.,
 

 State v. Weeks
 
 ,
 
 202 So.3d 1
 
 , 7 (Fla. 2016) ("[W]e are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.") (internal quotation marks omitted). We recognize that the scope of the existing statutory scheme has arisen in a context that is evolving and has to date focused more narrowly on the categorical rule announced in
 
 Graham
 
 , and on
 
 Miller
 
 , both of which found Eighth Amendment violations associated with juvenile life sentences. Given that context, and the fact that chapter 2014-220 was enacted prior to
 
 Henry
 
 , it is understandable that the Legislature would have crafted a statute dealing only with offenses that carry potential life sentences.
 

 CONCLUSION
 

 Because the plain language of the juvenile sentencing statutes does not provide for aggregation of sentences at judicial sentence review, we answer the certified question in the negative, quash the Fifth District's decision below, and remand for further proceedings consistent with this opinion.
 

 It is so ordered.
 

 CANADY, C.J., and POLSTON, J., concur.
 

 LEWIS, J., concurs in result.
 

 PARIENTE, J., dissents with an opinion, in which LABARGA, J., concurs.
 

 QUINCE, J., dissents.
 

 While the 2015 version of the Florida Statutes applies to the case at issue and is therefore the version cited in this opinion, the current 2018 version of the Florida Statutes is the same for sections 921.1401, 921.1402, and 775.082.
 

 Cognizant of these issues, we observe that our decision today only addresses the statutory construction issue presented and does
 
 not
 
 foreclose Purdy from challenging his consecutive 112.7-month sentences in the trial court on Eighth Amendment grounds.